## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ATIBA MAYFIELD,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    Civil Action No. 26-28-CFC-SRF
                                   )
SERGEANT KENDRAKE EVANS, *et al.,* )
                                   )
            Defendants.            )

## REPORT AND RECOMMENDATION

Plaintiff Atiba Mayfield ("Plaintiff"), an inmate at the James T. Vaughn Correctional

Center ("JTVCC"), filed this action on January 12, 2026, alleging violations of his constitutional

rights under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. (D.I. 2) He

appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5) The court

proceeds to review and screen Plaintiff's amended complaint pursuant to 28 U.S.C.

§§ 1915(e)(2)(b) and 1915A(a). (D.I. 11) For the reasons set forth below, I recommend that the

court allow Plaintiff's equal protection and First Amendment retaliation claims against defendant

Sergeant Kendrake Evans to PROCEED, DISMISS the remaining causes of action against all

Defendants, and DENY Plaintiff's motion for a preliminary injunction.

## I.    BACKGROUND

The court previously issued a Report and Recommendation screening the original

complaint in this matter pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(a), recommending

dismissal of all but one count of the complaint against Sergeant Kendrake Evans. (D.I. 10) The

court adopted the Report and Recommendation and granted leave to amend the complaint. (D.I.

12) Because the amended complaint asserts causes of action against additional defendants who

were not named in the original complaint and contains new factual allegations, the court proceeds to screen the amended complaint.

Plaintiff's amended complaint is brought against Evans, JTVCC kitchen supervisor Sheryl Morris, Warden Brian Emig, and Robert May (collectively, "Defendants") pursuant to 42 U.S.C. § 1983, alleging that Defendants placed a substantial burden on his ability to practice his religious faith in violation of the First and Fourteenth Amendments of the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.* (D.I. 11) According to the amended complaint, Plaintiff was suspended from his employment as a main kitchen worker at JTVCC after Evans questioned Plaintiff about whether he had attended a Jummah prayer service in observation of his Muslim faith on January 9, 2026. (*Id.* at 2-3) The amended complaint alleges that Plaintiff did not attend the January 9, 2026 prayer service. (*Id.* at 3) Plaintiff was also threatened with termination of his employment and placement in the maximum-security Security Housing Unit ("SHU"),[1] but he was not actually placed in the SHU. (*Id.* at 3)

According to the amended complaint, Morris permitted inmates to arrive late to work or miss work assignments for non-religious reasons, such as visitation, medication distribution, and commissary. (*Id.* at 2, 4) However, Morris did not allow kitchen workers to miss work to attend religious services. (*Id.* at 4) The amended pleading further alleges that Emig and May failed to supervise or train correctional staff regarding inmates' religious rights. (*Id.*)

---

[1] The Security Housing Unit ("SHU") houses those inmates who have demonstrated that they cannot be housed in a lesser security and/or whose behavior and history are conducive to maximum security housing. *See* https://doc.delaware.gov/views/jtvcc.blade.shtml.

Plaintiff alleges that Defendants' conduct has had a chilling effect on his exercise of religious freedom, causing him to suffer emotional distress, loss of employment, and loss of religious practice. Plaintiff seeks compensatory damages, declaratory and injunctive relief, back pay, and reinstatement of his employment, as well as reimbursement of fees and costs. (*Id.* at 4)

## II.    LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Under 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1), a court may dismiss a complaint as frivolous if it depends on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Dooley*, 957 F.3d at 374 (internal citations and quotation marks omitted).

3

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) is identical to the legal standard used when deciding Federal Rule of Civil Procedure 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an

4

entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.    DISCUSSION

### A. Supervisory Liability / Failure to Train (Count VI)

It is well-established that there is no *respondeat superior* liability under Section 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he [ ] neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (holding that liability in a § 1983 action must be based on personal involvement, not *respondeat superior*). Such involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Although a supervisor cannot encourage constitutional violations, the supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *see also Matthews v. Graves*, 2014 WL 4743958, at *3 (D. Del. Sept. 19, 2014).

The amended complaint asserts the following factual allegations against defendants Emig, May, and Morris based on their supervisory positions:

- "Defendant Morris implemented and maintained a policy or practice of preventing kitchen workers from attending religious services." (D.I. 11 at 4)

- "Defendant Morris maintained customs or practices permitting religious discrimination against inmates attending religious services." (*Id.*)

- "Defendant Morris failed to reasonably accommodate Plaintiff's religious obligations despite permitting accommodations for comparable secular activities." (*Id.*)

- "Defendant Emig failed to intervene and protect the religious rights of inmates working in the kitchen." (*Id.*)

- "Defendant Emig failed to adequately supervise or train correctional staff regarding inmates' constitutional and statutory rights." (*Id.*)

- "Defendant May[ ] maintained customs, policies, practices, or failures in supervision permitting interference with inmates' religious exercise." (*Id.*)

At best, the amended complaint includes only conclusory allegations that Emig, May, or Morris established and maintained a policy, practice or custom that caused Plaintiff's constitutional harm. There are no allegations that Emig and May participated in violating Plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of their subordinates' violations. Moreover, there are no factual allegations tethering Morris's conduct to Plaintiff's recitation of the legal elements for the asserted causes of action. Accordingly, I recommend that any and all claims against Emig, May, and Morris be dismissed for failure to state a claim upon which relief may be granted.

## B. Due Process Claim (Count III)

The amended complaint alleges that Plaintiff's due process rights were violated because he was suspended and threatened with discipline "without notice, hearing, or meaningful opportunity to challenge the allegations against him." (D.I. 11 at 6-7) However, the complaint does not plausibly identify a constitutionally protected liberty or property interest in Plaintiff's

job assignment or his place of confinement. Traditionally, prisoners do not have a constitutional liberty or property interest in a prison job assignment or a particular place of confinement. *See Meachum v. Fano*, 427 U.S. 215, 228-29 (1976); *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989). Because Plaintiff's amended complaint did not cure the deficiencies identified in the due process claim asserted in the original complaint, I recommend that the court dismiss the claim with prejudice. *See Swanson v. Walker*, C.A. No. 2-549-CFC, 2025 WL 2160952, at *2 (D. Del. July 30, 2025) ("An amended complaint that fails to cure the deficiencies in Plaintiff's § 1983 claim may be dismissed with prejudice.").

## C. Equal Protection Claim (Count IV)

The amended complaint alleges that Evans's conduct violated Plaintiff's equal protection rights under the Fourteenth Amendment because Plaintiff was treated differently based on his religious beliefs. (D.I. 11 at 7) To state a claim, Plaintiff must allege that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). The amended complaint alleges that Plaintiff was suspended from his kitchen job and threatened with placement in the SHU because he is Muslim and Evans believed Plaintiff participated in Muslim religious services. (D.I. 11 at 7) According to Plaintiff, other inmates were permitted to leave work assignments or arrive late to work for secular reasons without being punished or threatened with termination. (*Id.*) The amended complaint also contends that "Plaintiff was not accused of any unrelated misconduct, violence, contraband violation, insubordination, or security threat" that might otherwise justify the difference in treatment. (*Id.* at 3, 7) These allegations are sufficient to survive a screening under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(a).

7

**D. First Amendment Free Exercise of Religion and RLUIPA (Counts I and V)**

Under RLUIPA, a plaintiff must plead facts indicating that his own sincerely held religious beliefs were infringed. *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015). RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1. A substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). Similarly, a plaintiff alleging a cause of action for a violation of the First Amendment's free exercise clause must plead that he has a sincerely held religious belief, and the challenged prison practice or policy is not reasonably related to penological interests. *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). The free exercise clause prohibits prison officials from denying an inmate "a reasonable opportunity of pursuing his faith." *See Cruz v. Beto*, 405 U.S. 319, 322 & n.2 (1972).

The amended complaint does not identify a substantial burden placed on Plaintiff's religious exercise in connection with his RLUIPA and First Amendment free exercise claims. The pleaded allegations focus on events surrounding a single religious service which Plaintiff did not attend on January 9, 2026. (D.I. 11 at 3) Plaintiff does not allege that he ever attended a Jummah prayer service either before or after the service on January 9, 2026. The amended complaint also fails to allege that Plaintiff was threatened or prevented from attending other religious services in accordance with his Muslim faith. An isolated incident is insufficient to establish that Defendants imposed a substantial burden on Plaintiff's religious exercise. *See Gill*

8

*v. DeFrank*, 8 F. App'x 35, 37 (2d Cir. 2001) (affirming lower court dismissal of First Amendment claim holding "missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion."); *see also Sutton v. Rasheed*, 323 F.3d 236, 257 (3d Cir. 2003) (drawing a distinction "between the deprivation of a single aspect of religious worship and the removal of any ability to undertake the free exercise of . . . religion generally."). For these reasons, I recommend that the court dismiss Counts I and V of the amended complaint without prejudice.

### E.   First Amendment Retaliation (Count II)

The amended complaint also alleges that Defendants suspended Plaintiff from his prison job, effectively terminated his employment, and threatened to transfer him to the SHU in retaliation for Plaintiff's perceived attendance at a religious service on January 9, 2026. (D.I. 11 at 3) A prisoner alleging retaliation must show: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor" in the officials' decisions. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). To state a claim for retaliation, a prisoner need not prove the existence of an independent liberty interest in the privileges that were denied because "[r]etaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under [Section] 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990).

With respect to the first element, Plaintiff's Muslim faith is constitutionally protected. *See Lasche v. New Jersey*, 2022 WL 604025, at *4 (3d Cir. Mar. 1, 2022) (recognizing two forms of constitutionally protected activity: "one involving religious belief, and the other, action

9

inspired by religious belief."). The amended complaint satisfies the second element by alleging that Plaintiff was suspended from his employment and effectively terminated. Plaintiff also pleads a causal connection between his constitutionally protected conduct and the adverse action. The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory conduct, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Plaintiff establishes a temporal link by alleging that Evans believed Plaintiff attended a religious service on January 9, 2026, and Plaintiff was effectively terminated from his employment on January 16, 2026. (D.I. 11 at 3) Therefore, I recommend that the court permit Plaintiff to proceed against Evans on his cause of action for First Amendment retaliation.

### F.    Motion for Injunctive Relief

Plaintiff moves for a preliminary injunction prohibiting Defendants from disciplining, suspending, or retaliating against him for religious observance. (D.I. 4) To obtain injunctive relief, a party must show a likelihood of success on the merits, irreparable harm if the injunction is not granted, that relief will not cause greater harm to the nonmoving party, and that relief is in the public interest. *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010). The third and fourth factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-MarEnterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). Because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *Rush v. Correctional Med.*

*Services*, Inc., 287 F. App'x 142, 144 (3d Cir. 2008) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

Plaintiff has not demonstrated irreparable harm in this instance. Plaintiff's preliminary injunction motion alleges that he was irreparably harmed due to "[l]oss of religious practice and job rights." (D.I. 4 at 2) The amended complaint alleges that Plaintiff did not attend a religious service on January 9, 2026, even though he was falsely accused of doing so. (*Id.*) It does not allege that Plaintiff was prevented or discouraged from attending a religious service at any other point. Moreover, harms resulting from termination of employment do not rise to the level of irreparable injury. *See Wilson v. Sinners*, C.A. No. 16-986-LPS, 2017 WL 1362018, at *8 (D. Del. Apr. 10, 2017) (citing *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974)). The amended complaint alleges "Plaintiff was advised that termination from employment could result in increased classification points and harsher confinement conditions" but acknowledges that "Plaintiff was never actually placed in SHU." (D.I. 11 at 3) Accordingly, I recommend that the court deny Plaintiff's motion for a preliminary injunction.

## IV.   CONCLUSION

For the reasons discussed above, I recommend that the court issue an Order in the form set forth below. In the event that the Report and Recommendation is adopted, the undersigned judicial officer will then issue a Service Order requiring Plaintiff to complete and provide to the Clerk of Court a U.S. Marshal-285 form for defendant Evans.

### ORDER

At Wilmington this __th day of _____, 2026, IT IS ORDERED that:

1.   The Report and Recommendation issued on May __, 2026 is **ADOPTED**.

11

2.    Plaintiff's claims against defendants Brian Emig, Robert May, and Sheryl Morris are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3.    Plaintiff's due process claim under the Fourteenth Amendment at Count III of the amended complaint is **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

4.    Plaintiff's First Amendment Free Exercise and RLUIPA claims at Counts I and V of the amended complaint are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

5.    The court has identified what appear to be a cognizable equal protection claim under the Fourteenth Amendment (Count IV) and a cognizable retaliation claim under the First Amendment (Count II) within the meaning of 28 U.S.C. § 1915A(b) against defendant Evans. Plaintiff may **PROCEED** against Evans on Counts II and IV of the amended complaint.

6.    Plaintiff's motion for a preliminary injunction (D.I. 4) is **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) double-spaced pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R.

Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: May 28, 2026

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

13